UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

M.A. Mortenson Company,

        Plaintiff,

  v.                                                                     **MEMORANDUM ORDER**
                                                          **AND OPINION**
Mt. Carmel Sand & Gravel Co., Inc.,                       Civil No. 05-1037 ADM/AJB

        Defendant.

___

Katherine A. Golden, Esq. and Bernard E. Nodzon, Esq., Faegre & Benson LLP, Minneapolis, MN, argued for and on behalf of Plaintiff.

Jonathan A. Strauss, Esq. and Andrea D. Kiehl, Esq., Flynn, Gaskins & Bennett, LLP, Minneapolis, MN, argued for and on behalf of Defendant.

___

## I. INTRODUCTION

On July 11, 2005, oral argument before the undersigned United States District Judge was heard on Defendant Mt. Carmel Sand & Gravel Co., Inc.'s ("Defendant" or "Mt. Carmel") Motion to Dismiss or in the Alternative, to Transfer Venue in Lieu of Answer [Docket No. 3] and Plaintiff M.A. Mortenson Company's ("Plaintiff" or "Mortenson") Motion to Compel Arbitration and Stay Litigation [Docket No. 11]. The ruling on the Motions was held in abeyance from July 11, 2005 to November 28, 2005, pending a ruling in a related matter. In its Complaint [Docket No. 1], Mortenson seeks to compel arbitration relating to a dispute over a contract signed by Mortenson and Mt. Carmel. For the reasons set forth herein, Mt. Carmel's Motion is denied and Mortenson's Motion is granted in part and denied in part.

## II. BACKGROUND

Plaintiff Mortenson is in the commercial construction business in 47 states. Kiehl Aff. [Docket No. 6] Ex. B. Defendant Mt. Carmel provides soil stabilization services for highway

and construction projects.  McPherson Aff. [Docket No. 5] ¶ 5.  When confronted with wet or flooded conditions, Mt. Carmel uses various chemical additives, such as lime-kiln dust or other chemicals, to stabilize soil so that construction may continue.  Kiehl Aff. Ex. A.  In November 1997, Mortenson began work as the general contractor of the Elmhurst Memorial Center for Health ("Elmhurst") in Elmhurst, Illinois.  Kiehl Aff. Ex. C.  On April 13, 1998, the superintendent of the project contacted Mt. Carmel to inquire as to Mt. Carmel's availability to perform soil stabilization work on the Elmhurst site, which was extremely wet.  Kiel Aff. Ex. D ¶¶ 3-4.  Although Mt. Carmel informed Mortenson it could not begin work for two weeks, Mt. Carmel forwarded a written price estimate for the work to Mortenson.  Id. ¶¶ 5-6.  The following day, Mortenson asked Mt. Carmel if it would be willing to sell Mortenson sufficient lime-kiln dust to stabilize the soil, as well as lease Mortenson a rotary mixer and operator.  Id. ¶ 7.  Mt. Carmel agreed to this arrangement, and forwarded Mortenson a revised quote.  Id. ¶ 8.

On April 21, 1998, the first load of lime-kiln dust was delivered to the Elmhurst site.  On the same day, Mt. Carmel received a subcontract agreement (the "Subcontract") from Mortenson.  Id. ¶ 10; Kiehl Aff. Ex. E ¶ 3; Subcontract (Kiehl Aff. Ex. F).  The Subcontract received from Mortenson reflected Mt. Carmel's initial proposal to Mortenson, which included estimates for performance of the work by Mt. Carmel, instead of the second, agreed-upon option in which Mt. Carmel provided the lime-kiln dust, rotary mixer, and operator.  Kiehl Aff. Ex. D ¶ 10.  Therefore, Philip Hipsher of Mt. Carmel crossed out the language regarding the initial plan and replaced it with terms describing the sale of the lime-kiln dust, rotary mixer rental, and "mobilization."  Kiehl Aff. Ex. E ¶¶ 4-5.  The Subcontract was then executed by both parties.  Id. ¶ 6. The Subcontract contained an arbitration clause that states:

2

> If the Contract Documents do not provide for Arbitration and if Mortenson, in its sole discretion, elects to demand arbitration with Subcontractor individually, or as part of joint proceedings with Owner or others, any dispute arising between Mortenson and Subcontractor under this Subcontract, including breach thereof, shall be decided by Arbitration in accordance with the then current Construction Industry Arbitration Rules of the American Arbitration Association, unless the parties mutually agree otherwise. Arbitration proceedings shall be held in Minneapolis, Minnesota, or such other place as Mortenson may designate. The award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

Subcontract at § 21.2. Ultimately, Mt. Carmel sold Mortenson 473.84 tons of lime-kiln dust between April and May 1998. Kiehl Aff. Ex. D. ¶ 15. In July 1998, Mortenson paid Mt. Carmel for the lime-kiln dust and rental. Id.

In December 1999, the concrete slab that formed the first floor of the structure at the Elmhurst site began to heave. Claims of defective work were made by the Elmhurst against Mortenson. Kiehl Aff. Ex. C. Following the apparent resolution of these claims with Elmhurst, Mortenson sought indemnification from Mt. Carmel based on the Subcontract. In response, Mt. Carmel filed a complaint in the Cook County Circuit Court in Illinois on May 16, 2005. Kiehl Aff. Ex. A. The complaint sought, among other things, a declaratory judgment that the Subcontract was invalid and unenforceable. Id. On May 19, 2005, Mortenson filed a Demand for Arbitration with the American Arbitration Association ("AAA"). Mortenson also filed the Complaint in this action on May 27, 2005. On June 16, 2005, Mortenson removed the Illinois action to federal court. Kiehl Aff. Ex. I. This Court heard argument on Mt. Carmel and Mortenson's Motions on July 11, 2005, but held the Motions in abeyance pending the outcome of a Motion to Dismiss in the Illinois action. That Motion was granted on November 28, 2005 [Docket No. 37], with the Illinois district court holding that the "arbitration agreement signed by Mount Carmel clearly states that the question of arbitration shall be decided by a court in the

jurisdiction in which the arbitration is pending. That is Minnesota." Thus, the instant Motions are now before this Court and ripe for decision.

### III.  DISCUSSION

A.  **Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. Pro. 12(b)(1). To defeat a motion to dismiss for lack of personal jurisdiction, a party need only make a prima facie showing of personal jurisdiction. Romak USA, Inc. v. Rich, 384 F.3d 979, 983 (8th Cir. 2004). Personal jurisdiction is established by a showing that the defendant maintains sufficient minimum contacts with the forum state. Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 562 (8th Cir. 2003).

B.  **Motion to Dismiss and Motion to Compel Arbitration**

As threshold matters, in its Motion to Dismiss, Mt. Carmel argues this Court should decline to exercise jurisdiction because of the parallel action in Illinois. Alternatively, Mt. Carmel argues this case should be transferred to Illinois so it can be joined with the action there. However, the Illinois federal court dismissed the action before it, holding that this Court is the appropriate court to determine whether arbitration should be compelled. Additionally, Mortenson moves for a stay of the Illinois litigation. Because these arguments have been resolved by the decision of the Illinois court, they will not be addressed.

Mt. Carmel's remaining argument for dismissal is that personal jurisdiction is lacking. Mt. Carmel contends that for this Court to exercise jurisdiction over Mt. Carmel, Mortenson must present a prima facie case demonstrating that Mt. Carmel maintains sufficient minimum

contacts with Minnesota to be hailed into court. Pecoraro, 340 F.3d at 562. Given Mt. Carmel's minimal contacts with Minnesota, Mt. Carmel avers it is not reasonable for it to be hailed into court in Minnesota. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

In response, Mortenson argues that Mt. Carmel waived its personal jurisdiction defense by the arbitration clause in the Subcontract, and, by extension, the rules set forth in the Federal Arbitration Act ("FAA"). The Subcontract arbitration provision states, in part: "arbitration proceedings shall be held in Minneapolis, Minnesota." Subcontract at § 21.2. Further, the FAA provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4. In Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, the Seventh Circuit held that § 4:

> [C]learly requires a geographic link between the site of the arbitration and the district which, by compelling arbitration or directing its scope, exercises preliminary control. The statute is perhaps awkwardly worded for present purposes in that the mandatory language ties the location of arbitration to the district in which the motion to compel is brought. Nonetheless, the inescapable logical import in the present situation, in which the location of arbitration is preordained, is that the statute limits the fora in which § 4 motions can be brought.

49 F.3d 323, 327 (7th Cir. 1995); see also M.A. Mortenson/the Meyne Co. v. Edward E. Gillen Co., No. Civ. 03-5135, 2003 WL 23024511 (D. Minn. Dec. 17, 2003) (holding that under the

same arbitration provision at issue in the instant case, § 4 defeats a lack of personal jurisdiction argument and compels arbitration).

Here, the arbitration provision in the Subcontract confers jurisdiction on this Court to compel arbitration. The language of § 4 is clear that the proper venue to compel arbitration is the district court in which the arbitration is to be held. The arbitration clause also clearly states that arbitration proceedings will be held in Minneapolis, Minnesota, or wherever Mortenson elects. Subcontract at § 21.2. As Mortenson has already filed with the AAA in Minneapolis, it has brought its Motion to Compel Arbitration in the correct forum, and jurisdiction exists.

In further support of its Motion, Mt. Carmel argues the arbitration provision does not cover the issue in dispute between the parties. However, the arbitration provision is broad and unambiguous covering "any dispute arising between Mortenson and Subcontractor under this Subcontract." Subcontract at § 21.2. Mortenson seeks indemnification based on the agreement arising out of the Subcontract. Therefore, a plain language interpretation of the arbitration provision reveals the issues presented here fall under the provision. Mt. Carmel further avers that the Subcontract is facially void because it contains numerous terms related to Mt. Carmel's first offer to Mortenson that were not agreed to. See, e.g., Subcontract at § 15. According to Mt. Carmel, because neither party intended these provisions to be performed, the entire Subcontract is void. Although certain measures in the Subcontract delineating the scope of Mt. Carmel's duties may not have been agreed to, there is no evidence on the face of the Subcontract that the provisions unrelated to the scope of Mt. Carmel's direct involvement in the Elmhurst project are somehow void as a result. Of particular note, while the terms of the original offer were crossed out, the arbitration provision was left intact. Indeed, Mt. Carmel's representative signed the

Subcontract in four separate places. See Subcontract.

Whether Mt. Carmel's argument regarding the validity of the Subcontract is legally correct is not at issue. What is at issue is whether the matter is required to be arbitrated. Mortenson's Motion to Compel Arbitration is granted, and Mt. Carmel's Motion to Dismiss denied, for the following reasons. First, the FAA determined that any doubts as to the scope of arbitrable issues should be solved in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1982) (federal policy favors arbitration). Second, where, as here, an entity claims the entire agreement under which the arbitration arises is void, courts have determined an arbitrator should handle this issue.

> Under § 4, with respect to a matter within the jurisdiction of the federal courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue." Accordingly, if the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the "making" of the agreement to arbitrate--the federal court may proceed to adjudicate it.

Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967) (quoting § 4). Here, although Mt. Carmel contends the entire agreement is void, it does not contend that Mortenson fraudulently induced it to sign the arbitration provision--nor, in fact does it contend that any part of the Subcontract is a product of fraud. Rather, it argues the Subcontract is void for unilateral or mutual mistake. Consequently, Mt. Carmel's Motion to Dismiss is denied and Mortenson's Motion to Compel Arbitration is granted.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss or in the Alternative, to Transfer Venue in Lieu of Answer [Docket No. 3] is **DENIED**; and

2. Plaintiff's Motion to Compel Arbitration and Stay Litigation is **GRANTED** in part and **DENIED** in part.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: December 20, 2005.